

U.S. Department of Justice

United States Attorney
District of Maryland
Northern Division

*FILED U.S. DISTRICT COURT DISTRICT OF MARYLAND 2012 SEP -4 P 3: 58 CLERK'S OFFICE AT BALTIMORE*

| | | |
|---|---|---|
| *Rod J. Rosenstein*<br>*United States Attorney*<br><br>*Rachel Miller Yasser*<br>*Assistant United States Attorney* | *36 South Charles Street*<br>*Fourth Floor*<br>*Baltimore, Maryland 21201* | *DIRECT: 410-209-4922*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-0716*<br>*TTY/TDD: 410-962-4462* |

July 25, 2012

Stephen Tully, Esq.
501 Fairmount Avenue, Suite 100
Towson, Maryland 21286

    Re:    *United States v. John Andrew Blaes*, JKB 12-247

Dear Counsel:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by Friday, August 3, 2012, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

    1.    The Defendant agrees to plead guilty to Counts One and Two of the Indictment now pending against him, which charges him with conspiracy to produce child pornography and transportation of a minor to engage in sexually explicit conduct in violation of Title 18, United States Code, Sections 2251(e) and 2423(a), respectively. The Defendant admits that he is, in fact, guilty of these offenses and will so advise the Court.

### Elements of the Offense

    2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

### Count One: Conspiracy to Produce Child Pornography

      a.      That, in or about July 2011 through in or about November 2011, the Defendant conspired and agreed with his co-defendant to knowingly employ, use, persuade, induce, entice, or coerce a minor female to engage in sexually explicit conduct;

      b.      for the purpose of producing a visual depiction of such conduct; and

      c.      that the Defendant had reason to know that the visual depiction would be transported in interstate commerce, said visual depiction was transported in interstate or foreign commerce, or the materials used to produce the visual depiction were transported in interstate commerce.

### Count Two: Transportation of Minor to Engage in Sexually Explicit Conduct

      a.      That, on or about July 22, 2011 through on or about July 26, 2011, the Defendant knowingly transported an individual in interstate or foreign commerce;

      b.      that the defendant transported this individual with the intent that the individual engage in prostitution or any sexual activity for which any person can be charged with a criminal offense;

      c.      that the individual had not attained the age of 18 years at the time of transportation.

### Penalties

3.      The maximum sentence provided by statute for the offenses to which the Defendant is pleading guilty is as follows: Count One: a mandatory minimum of 15 years imprisonment and a maximum of 30 years imprisonment, followed by a mandatory minimum of five years of supervised release and a maximum of life; and a maximum fine of $250,000; Count Two: a mandatory minimum sentence of 10 years imprisonment up to a maximum of life imprisonment; a mandatory minimum term of supervised release of 5 years up to a maximum term of lifetime supervised release; and a maximum fine of $250,000. In addition, the Defendant must pay $200.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant

---

[1]      Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

5.   The Defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

### Waiver of Rights

6.   The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a.   If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b.   If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c.   If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

   d.   The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

   e.   If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against

him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

   g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

   h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

   7. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

   8. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors.

## Counts One and Two: Closely Related Group

   a. Pursuant to § 3D1.2(b), Counts One and Two are grouped together into a single Group. Pursuant to § 3D1.3(a), the offense level for the Group is the highest

4

offense level of the counts in the Group. The offense level for Count Two is 34, pursuant to § 2G1.3; the offense level for Count One is 46, pursuant to § 2G2.1 and calculated as follows:

      b.      Pursuant to § 2G2.1(a) the base offense level is 32.

      c.      Pursuant to § 2G2.1(b)(1)(B), 2 levels are added because the offense involved a minor who had not attained the age of 16 years at the time of the offense. (SUBTOTAL = 34)

      d.      Pursuant to § 2G2.1(b)(2), 2 levels are added because the offense involved the commission of a sexual act or sexual contact. (SUBTOTAL = 36)

      e.      Pursuant to § 2G2.1(b)(3), 2 levels are added because the offense involved distribution. (SUBTOTAL = 38)

      f.      Pursuant to § 2G2.1(b)(4), 4 levels are added because the offense involved sadistic or masochistic conduct. (SUBTOTAL = 42)

      g.      Pursuant to § 2G2.1(b)(6), 2 levels are added because the offense involved the use of a computer to persuade, induce, entice, coerce, or facilitate the travel of a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct. (SUBTOTAL = 44)

      h.      Pursuant to § 3A1.1, 2 levels are added because the defendant knew that the victim of the offense was vulnerable (for a reason other than age). (TOTAL = 46).

### Acceptance of Responsibility

      a.      This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; ©) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

      b.      With acceptance of responsibility, the **Final Adjusted Offense Level is 43.**

9. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

10. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Obligations of the United States Attorney's Office

11. At the time of sentencing, this Office will recommend a reasonable sentence pursuant to 18 U.S.C. 3553(a). At the time of sentencing, this Office will move to dismiss the open counts against the Defendant.

12. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### Waiver of Appeal

13. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and

agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

14. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

15. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

16. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the

complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Rachel M. Yasser
Judson Mihok
Assistant United States Attorneys

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

7/26/12
Date                                                    John Andrew Blaes

I am Mr. Blaes' attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that she understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

7/26/12
Date                                                    Stephen Tully, Esq.

## ATTACHMENT A-STATEMENT OF FACTS

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The defendant, John Andres Blaes ("**BLAES**"), age 49, is a resident of Parkville, Maryland.

The victim in this case, age 15, was born in September 1995 and will be referred to herein as "Minor Female." Prior to July 2011, Minor Female was living with her family in North Carolina.

At some time prior to March 2010, **BLAES** and **JONES** met online and became involved in a sexual relationship involving bondage, discipline, sadism, and masochism ("BDSM"), with **BLAES** as the "master" and **JONES** as the "subordinate." **JONES** thereafter moved into **BLAES'** house located in Parkville, Maryland.

Up to and including July 2011, **BLAES** used the Internet to contact other women and girls for the purpose of engaging in the BDSM lifestyle.

On July 5, 2011, **BLAES** contacted Minor Female online and solicited Minor Female to engage in sexual conduct with him and **JONES**, knowing that Minor Female was a minor. **BLAES** and **JONES** learned that the victim was vulnerable for reasons other than her age.

As part of the solicitation process, both **BLAES** and **JONES** sent pornographic pictures of themselves to Minor Female using the computer.

In or around July 22, 2011, **BLAES** and **JONES** traveled interstate from Maryland to North Carolina to pick Minor Female up and bring her to Maryland to live at the Parkville residence.

After picking Minor Female up in North Carolina, **BLAES** and **JONES** sexually abused Minor Female in the back of their vehicle. The sex abuse included bondage with ropes and chains and clamps.

On or about July 23, 2011, **BLAES** and **JONES** rented a hotel room in North Carolina for the purpose of engaging in sexually explicit conduct with Minor Female.

**BLAES** and **JONES** used a camera to document the sexual abuse of Minor Female in the van and the hotel. The images captured by **BLAES** and **JONES** constitute the definition of child pornography and include sadist and masochistic conduct.

From approximately July 22, 2011 to November 20, 2011, **BLAES** and **JONES** engaged in sex acts with Minor Female multiple times a week. **BLAES** and **JONES** provided and used sex toys on Minor Female and had Minor Female use sex toys on them. **BLAES** also cut Minor

Female and held lemons to her injuries.

Minor Female was directed to call **BLAES** her "master" or "sir," and to call **JONES** "mistress." **BLAES** and **JONES** referred to Minor Female as their "slave." Minor Female was kept in their residence or in their custody or control at all times and was not enrolled in school.

**BLAES** and **JONES** used a camera and cell phones to photograph Minor Female in sexually explicit poses and to document their sexual abuse of Minor Female.

**BLAES** distributed the sexually explicit images of Minor Female online for the purpose of recruiting other individuals into his BDSM lifestyle with **JONES**.

**BLAES** and **JONES** instructed Minor Female to keep the sexual conduct and her age a secret.

Agreed to this 30 day of August, 2012

_____
John Andrew Blaes, Defendant